IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
BRADLEY J. JENKINS,              :
                                 :
          Plaintiff,             :
                                 :
     v.                          : Civil Action No. 08-245-JJF
                                 :
MICHAEL J. ASTRUE,               :
Commissioner of Social           :
Security,                        :
                                 :
          Defendant.             :
                                 :
                                 :
```

Bradley J. Jenkins, Pro Se Plaintiff.

David C. Weiss, Esquire, United States Attorney, and Dina White Griffin, Esquire, Special Assistant United States Attorney, of the OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, Delaware. Of Counsel: Eric P. Kressman, Esquire, Regional Chief Counsel, and Melissa Curry, Esquire, Assistant Regional Counsel of the SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania.

Attorneys for Defendant.

**MEMORANDUM OPINION**

July 29, 2010

Wilmington, Delaware

Farnan, District Judge.

Presently before the Court is an appeal pursuant to 42 U.S.C. § 405(g) filed by Plaintiff, Bradley Jenkins, seeking review of the final administrative decision of the Commissioner of the Social Security Administration (the "Administration") denying his claim for supplemental security income ("SSI") under Title XVI, respectively of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383f. Plaintiff has filed a pro se Motion For Summary Judgment (D.I. 23). In response to Plaintiff's Motion, Defendant has filed a Cross-Motion For Summary Judgment (D.I. 24) requesting the Court to affirm the Commissioner's decision. For the reasons set forth below, Defendant's Cross-Motion For Summary Judgment will be denied, and Plaintiff's Motion For Summary Judgment will be granted. The decision of the Commissioner dated July 9, 2007, will be reversed, and this matter will be remanded to the Administration for further findings and/or proceedings.

## BACKGROUND

### I.  Procedural Background

Plaintiff filed his application for SSI on April 18, 2003, alleging disability since December 31, 2000, due to bipolar disorder, schizophrenia, lumbar degenerative disc disease, osteoporosis and a herniated disc. (Tr. 107, 112). Plaintiff's application was denied initially and upon reconsideration. (Tr. 27-30). Thereafter, Plaintiff requested a hearing before an

administrative law judge (the "A.L.J."). (Tr. 338-78). On July 9, 2007, the A.L.J. issued a decision denying Plaintiff's application for SSI. (Tr. 11-26). Following the unfavorable decision, Plaintiff timely appealed to the Appeals Council. (Tr. 6-9). The Appeals Council denied Plaintiff's request for review, and the A.L.J.'s decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000).

After completing the process of administrative review, Plaintiff filed the instant civil action pursuant to 42 U.S.C. § 405(g) seeking review of the A.L.J.'s decision denying his claim for SSI. In response to the Complaint, Defendant filed a Motion To Dismiss, which was later withdrawn, and the Transcript (D.I. 12) of the proceedings at the administrative level.

Thereafter, Plaintiff filed a Motion For Summary Judgment. In response, Defendant filed a Cross-Motion For Summary Judgment and a Combined Opening Brief in support of his Cross-Motion and Opposition to Plaintiff's Motion requesting the Court to affirm the A.L.J.'s decision. Plaintiff has not filed a Reply Brief. Accordingly, the Court will proceed to address the merits of Plaintiff's claims.

## II. Factual Background

### A. Plaintiff's Medical History, Condition and Treatment

At the time of the A.L.J.'s decision, Plaintiff was 51 years old. (Tr. 117). Plaintiff completed his GED and received an

2

associates degree in a two-year college. (Tr. 118). As a hobby, Plaintiff writes books for 2-4 hours per day. (Tr. 136). During the time period relevant to his application, from April 18, 2003 to July 9, 2007, Plaintiff was arrested at least seven times for driving while intoxicated (DWI). He was incarcerated twice for DWI and driving with a revoked license. (Tr. 344-345).

By way of brief summary, Plaintiff has a history of alcohol abuse, mental illness, and back and knee problems. On August 14, 2003, Plaintiff underwent a psychiatric consultative examination with Harvey Fernbach, M.D. Dr. Fernbach noted that Plaintiff's mood was euthymic and his affect was full range and appropriate. (Tr. 217). There was no evidence of a thought disorder or psychosis. (Tr. 217). Dr. Fernbach's diagnostic conclusion was to rule out psychosis in remission, polysubstance abuse reported to be in remission, and alcohol abuse reported in partial remission. Dr. Fernbach opined that Plaintiff's prognosis would be improved with abstinence from alcohol. He further opined that Plaintiff had the capacity to understand and follow simple instructions, sustain concentration and persistence, and socially interact and adapt. According to Dr. Fernbach, Plaintiff's ability to tolerate and adapt to work-related stresses and demands was not impaired by his psychiatric issues.

After being incarcerated, Plaintiff treated with a psychiatrist, Dr. Shamsia Ally. Plaintiff reported that he had

3

been diagnosed in prison with bipolar disorder and treated with Lithium, Prozac, Doxepin and Levoxyl. (Tr. 189). Dr. Ally noted that Plaintiff was friendly, cooperative, his mood was expansive and his affect was broad. His thinking was clear and goal-directed. He admitted to auditory hallucinations, but his memory was intact and his judgment was fair. (Tr. 190). Dr. Ally diagnosed Plaintiff with bipolar disorder with most recent episode manic and polysubstance abuse in remission. (Tr. 191).

Plaintiff also treated with Richard M. Cirillo, M.D. for back and knee pain. Dr. Cirillo noticed that Plaintiff had a thickened fibrotic area involving the prepatellar region consistent with a probable lessening of swelling of a previous bursitis. X-rays were normal and a bone scan showed evidence of a slight increase uptake involving the right coracoid, in addition to the left proximal tibia and at the right lower lumbar pedicle and facet region. A DEXA scan was consistent with osteoporosis. Dr. Cirillo diagnosed osteoporosis, L4-5 probable facet arthropathy and right knee prepatellar bursitis. He was prescribed Ultram, Skelaxin, Lidoderm and home exercises. (Tr. 204).

Plaintiff also saw Bryan R. Herron, M.D. on December 11, 2003, for low back pain. Plaintiff's examination was essentially normal. An MRI reveled degenerative disc disease, herniated nucleus pulposis, and a fracture at T-12. (Tr. 255-256). Dr.

Herron recommended anti-inflammatory medication and a home exercise program.

Plaintiff had follow-up examinations with Catherine Heilig, CRNP for his osteoporosis and back pain. She prescribed Ultram. On physical examination, Plaintiff's spine was erect without tenderness to palpation. He was diagnosed with chronic back pain with occasional muscular spasms and inactivity osteoporosis.

### B. The A.L.J.'s Decision

At the hearing, Plaintiff was accompanied by a paralegal representative, and Plaintiff testified. The A.L.J. consulted a vocational expert and asked him to consider a hypothetical person with Plaintiff's age, education, and work history, who would be limited to light exertional work with lifting of no more than 20 pounds occasionally, a sit/stand option with no more than 20 to 30 minutes required in one position, no climbing of ropes, ladders or scaffolds, only occasional stooping, and simple routine unskilled work involving no more than occasional contact with coworkers, supervisors or the public. In response, the A.L.J. identified the position of assembly work with 2,000 jobs regionally (defined as a 75 mile radius of Washington, D.C.), a non-postal mail clerk with 1,700 jobs regionally and 85,000 jobs nationally, and inspector, router or paperwork dispatcher with

65,000 jobs regionally and 350,000 jobs nationally.[1]  The A.L.J.
also asked the vocational expert to consider sedentary level
jobs, and she noted the position of order clerk with 400 jobs
locally and 80,000 jobs nationally, and inspector with 350 jobs
locally and 60,000 jobs nationally.

In his decision dated July 9, 2007, the A.L.J. found that
Plaintiff suffered from "substance use disorder, alcohol; bipolar
disorder; osteoporosis, and disorders of the spine and knee"
which were severe impairments.  The A.L.J. further concluded that
Plaintiff's impairments met listings 12.04 and 12.09, but that
the listings were not met when Plaintiff abstained from alcohol.
When Plaintiff stopped abusing alcohol, the A.L.J. further found
that Plaintiff had the residual functional capacity to perform
light work with a sit/stand option (standing no more than 20-30
minutes before being permitting to sit and sitting no more than
20-30 minutes before standing), avoiding climbing, and stooping
on an occasional basis.  The A.L.J. also found that Plaintiff had
moderate difficulties in social functioning and moderate
difficulties in concentration, persistence or pace that would
limit him to simple, routine, unskilled tasks involving no more
than occasional contact with co-workers, supervisors or the
public.  Based on this residual functional capacity, the A.L.J.

---

[1]     The vocational expert appears to have reversed these
numbers in his testimony.  (Tr. 375).

determined that Plaintiff could perform a significant number of
jobs in the national economy, provided that Plaintiff stop
abusing alcohol.  (Tr. 25).  Accordingly, the A.L.J. concluded
that Plaintiff was not under a disability within the meaning of
the Act.

## STANDARD OF REVIEW

Findings of fact made by the Commissioner of Social Security
are conclusive, if they are supported by substantial evidence.
Accordingly, judicial review of the Commissioner's decision is
limited to determining whether "substantial evidence" supports
the decision.  Monsour Medical Ctr. v. Heckler, 806 F.2d 1185,
1190 (3d Cir. 1986).  In making this determination, a reviewing
court may not undertake a de novo review of the Commissioner's
decision and may not re-weigh the evidence of record.  Id.  In
other words, even if the reviewing court would have decided the
case differently, the Commissioner's decision must be affirmed if
it is supported by substantial evidence.  Id. at 1190-91.

The term "substantial evidence" is defined as less than a
preponderance of the evidence, but more than a mere scintilla of
evidence.  As the United States Supreme Court has noted,
substantial evidence "does not mean a large or significant amount
of evidence, but rather such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."  Pierce
v. Underwood, 487 U.S. 552, 555 (1988).

With regard to the Supreme Court's definition of "substantial evidence," the Court of Appeals for the Third Circuit has further instructed, "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores or fails to resolve a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence . . . or if it really constitutes not evidence but mere conclusion." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the substantial evidence standard embraces a qualitative review of the evidence, and not merely a quantitative approach. Id.; Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981).

## DISCUSSION

## I. Evaluation Of Disability Claims

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. §§

8

404.1505, 416.905.   In order to qualify for disability insurance
benefits, the claimant must establish that he or she was disabled
prior to the date he or she was last insured.   20 C.F.R. §
404.131, Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).   The
claimant bears the initial burden of proving disability.   20
C.F.R. §§ 404.1512(a), 416.912(a); Podeworthy v. Harris, 745 F.2d
210, 217 (3d Cir. 1984).

In determining whether a person is disabled, the Regulations
require the A.L.J. to perform a sequential five-step analysis.
20 C.F.R. §§ 404.1520, 416.920.   In step one, the A.L.J. must
determine whether the claimant is currently engaged in
substantial gainful activity.   In step two, the A.L.J. must
determine whether the claimant is suffering from a severe
impairment.   If the claimant fails to show that his or her
impairment is severe, he or she is ineligible for benefits.
Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

If the claimant's impairment is severe, the A.L.J. proceeds
to step three.   In step three, the A.L.J. must compare the
medical evidence of the claimant's impairment with a list of
impairments presumed severe enough to preclude any substantial
gainful work.   Id. at 428.   If the claimant's impairment meets or
equals a listed impairment, the claimant is considered disabled.
If the claimant's impairment does not meet or equal a listed
impairment, the A.L.J.'s analysis proceeds to steps four and

9

five.  Id.

In step four, the A.L.J. is required to consider whether the claimant retains the residual functional capacity to perform his or her past relevant work.  Id.  The claimant bears the burden of establishing that he or she cannot return to his or her past relevant work.  Id.

In step five, the A.L.J. must consider whether the claimant is capable of performing any other available work in the national economy.  At this stage the burden of production shifts to the Commissioner, who must show that the claimant is capable of performing other work if the claimant's disability claim is to be denied.  Id.  Specifically, the A.L.J. must find that there are other jobs existing in significant numbers in the national economy, which the claimant can perform consistent with the claimant's medical impairments, age, education, past work experience and residual functional capacity.  Id.  In making this determination, the A.L.J. must analyze the cumulative effect of all of the claimant's impairments.  At this step, the A.L.J. often seeks the assistance of a vocational expert.  Id. at 428.

## II.  Whether The A.L.J.'s Decision Is Supported By Substantial Evidence

By his Motion, Plaintiff requests the Court to "look over the Appeal that Pauline Poirier had filed and see the points that she made were valid."  (D.I. 23 at 2).  Plaintiff also cites to additional medical information regarding his condition.

10

In her letter brief, Ms. Poirier primarily contends that the A.L.J. based his decision on a misinterpretation of Dr. Ally's notes. (Tr. 336-337). Specifically, Ms. Poirier points out that Plaintiff was not using alcohol during the periods of time in which Dr. Ally opined that Plaintiff was still disabled and met Listing Impairment 12.04. Thus, Ms. Poirier contends that the A.L.J. erred in concluding that Plaintiff was not disabled when he stopped abusing alcohol, because the express opinion of his treating psychiatrist, which was relied upon by the A.L.J., did not support that conclusion.

In his decision, the A.L.J. states that "[p]rogress notes from Dr. Ally show that the claimant's mental status was stable when compliant with prescribed treatment and not drinking alcohol." (Tr. 24). The A.L.J. also states that "Dr. Fernbach's opinion was given substantial weight, because it is consistent with findings on mental status examination and it is not inconsistent with the progress notes from claimant's treating psychiatrist, Dr. Ally." (Tr. 24).

The opinion of a treating physician is generally given controlling weight. However, an opinion of a treating physician that is not supported by medically acceptable clinical and laboratory diagnostic techniques and is not consistent with the other substantial evidence in the case is not entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2). "A treating

11

physician's opinion may be afforded 'more or less weight depending upon the extent to which supporting explanations are provided.'" Foley v.. Comm'r of Soc. Sec., 349 Fed. Appx. 805, *2 (3d Cir. 2009) (citing Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citation and internal quotations omitted)). If the treating physician's opinion is not given controlling weight, the A.L.J. is required to explain his or her reasons for discounting or affording less weight to the opinion. Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).

The difficulty the Court has in this case is that it appears that the A.L.J. credited Dr. Ally's opinion, but mischaracterized Dr. Ally's treatment notes as supporting the conclusion that Plaintiff was not disabled when he refrained from abusing alcohol. Numerous progress notes from Dr. Ally are from a period of time during which Plaintiff was not abusing alcohol.[2] During this time frame, Dr. Ally also found that Plaintiff suffered from repeated (three or more) episodes of decompensation, marked difficulties in maintaining social functioning, frequent difficulties maintaining concentration consistence or pace, a GAF

---

[2] By way of example, the Court notes that Plaintiff was reported to be "clean of alcohol" at his January 7, 2004 visit with Dr. Ally. At his March 11, 2004 visit, there is no indication in Dr. Ally's notes that Plaintiff relapsed into alcohol abuse, and Dr. Ally noted that Plaintiff reported "hearing voices and having conversations with God" despite compliance with his medications. (Tr. 182)

score of 50[3], and repeated auditory hallucinations.  (Tr. 182, 244-246, 186, 189).  Plaintiff was also taking numerous medications such as lithium, prozac, trazadone, antabuse and risperdal. At a minimum, there is ambiguity as to whether Dr. Ally's opinion regarding the severity of Plaintiff's mental impairment relates only to a time during which Plaintiff was abusing alcohol, or whether it also applies to those periods of time during which Plaintiff abstained from alcohol.

In these circumstances, the Court concludes that a remand of this matter to the Administration is necessary for the A.L.J. to reconsider Dr. Ally's treatment notes and to contact Dr. Ally, if necessary, to clarify whether Dr. Ally's opinion pertains to the period of time during which Plaintiff was not abusing alcohol.[4] 20 C.F.R. § 416.927; Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995).  Resolution of these issues may, in turn, affect the manner in which the A.L.J. treats Dr. Fernbach's opinion, as the

_____

[3]     A GAF score in the range of 41-50 indicates "[s]erious symptoms or any serious impairment in social, occupational or school functioning."  Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (4th ed. 1994).

[4]     The Court acknowledges that the A.L.J.'s duty to develop the record only arises when there is insufficient evidence for the A.L.J. to make a rational decision.  Because Dr. Ally is the only treating psychiatrist in the record, and the A.L.J. only considered the opinion of the examining consultant Dr. Fernbach in the context of Dr. Ally's opinion, it is evident to the Court that an accurate understanding of Dr. Ally's opinion is critical to this case and without such an understanding, the Court cannot conclude that there is otherwise sufficient evidence in the record to support the A.L.J.'s decision.

13

A.L.J. gave that opinion substantial weight based upon its purported consistency with Dr. Ally's opinion.  Accordingly, the Court will reverse the decision of the Commissioner on Plaintiff's claim and remand this matter to the Administration.

### CONCLUSION

For the reasons discussed, the Court will deny Defendant's Cross-Motion For Summary Judgment and grant Plaintiff's Motion For Summary Judgment.  The decision of the Commissioner dated July 9, 2007, will be reversed, and this matter will be remanded to the Administration for further findings and/or proceedings.

An appropriate Order will be entered.